IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JEAN FRANK PHILLIPS                                                                                PLAINTIFF

V.                                                                        CIVIL ACTION NO. 1:08CV291-B-D

LEGGETT & PLATT, INC.                                                                          DEFENDANT

**<u>MEMORANDUM OPINION</u>**

This cause comes before the court upon the plaintiff's motion for liquidated damages and motion for reinstatement or, alternatively, for front pay and the defendant's motion for renewal of Rule 50(a) trial motion and motion for judgment as a matter of law, or alternatively, for a new trial. Upon due consideration of the motions, responses, exhibits, and supporting and opposing authority, the court is ready to rule.

<u>Factual and Procedural History</u>

On March 23, 2010, after a trial of this matter, a jury found that the defendant willfully discriminated against the plaintiff in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), when it terminated the plaintiff's employment. The plaintiff had also asserted a claim for the defendant's failure-to-hire the plaintiff to a different position, but the court granted the defendant's Rule 50(a) motion for judgment as a matter of law on this claim on the ground that the claim was procedurally barred due to the plaintiff's failure to include the allegation in her EEOC Charge of Discrimination. The jury returned a verdict in favor of the plaintiff in the amount of $53,370.00 on the wrongful termination claim.

At the close of the plaintiff's case and again after the presentation of all the evidence but before the case was submitted to the jury, the defendant moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). After granting the motion on the failure-to-

hire claim, the court reserved ruling as to whether the wrongful termination claim should also be dismissed. The defendant has now renewed that motion and has separately and repetitively moved for judgment as a matter of law pursuant to Rule 50(b).[1] The defendant has moved in the alternative for a new trial pursuant to Rule 59. Because the Rule 50 motions are virtually identical, the court will address them simultaneously, including the motion for new trial.

*Defendant's Rule 50 Motions and Motion for New Trial*

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). When addressing a Rule 50 motion, "the court must review all of the evidence from the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence." *East Texas Med. Ctr. Reg'l Healthcare Sys. v. Lexington Ins. Co.*, 575 F.3d 520, 525 (5th Cir. 2009). The court must "consider all the evidence presented at trial in the light most favorable to the nonmoving party" and "should disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper." *Boeing v. Shipman*, 411 F.2d at 374-75 (5th Cir. 1969), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (1997).

---

[1] A Rule 50(b) motion *is* a renewal of a Rule 50(a) motion after the jury has returned a verdict. *See, e.g., Shepherd v. Dallas County*, 591 F.3d 445, 456 (5th Cir. 2009).

2

A Rule 59 motion for a new trial is "an extraordinary remedy that should not be used to 'rehash evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.'" *Craig v. Grant Parish Policy Jury*, 593 F. Supp. 2d 901, 903 (W.D. La. 2008) (quoting *Templet v. HydroChem, Inc.*, 367 F.3d 473 (5th Cir. 2004)). Further, "[a] court has considerable discretion as to whether or not a Rule 59 motion should be granted or denied." *Id*. at 903-04 (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167 (5th Cir. 1990), *overruled on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)).

The defendant sets forth three main arguments in support of its motions. First, the defendant again argues, as it did at the summary judgment stage, that the plaintiff's ADEA claim is time-barred. Second, the defendant repeats its summary judgment argument that the court does not have grounds to equitably toll the plaintiff's ADEA termination claim. Third, the defendant contests the sufficiency of the evidence to support the jury's verdict and claims that the plaintiff failed to establish a prima face case that she was qualified for the position of assistant office manager.

As the first two arguments are simply a rehashing of arguments previously examined and rejected by this court, the court will address them only briefly here. Despite the fact that the plaintiff acknowledged her awareness that her recall was only temporary, the court maintains that her EEOC charge was timely. The defendant's own documents show that the plaintiff was "laid off" on July 30, 2007, "recalled" on August 6, 2007, and was simply "off 4 days." As the plaintiff states, she "merely knew that her [recall] job was for an indefinite duration, just as all of her employment with Leggett & Platt had been." The plaintiff was finally terminated on January 2, 2008, and timely filed her EEOC charge on March 5, 2008.

It is well settled in this circuit that "adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). A transfer, which is essentially what occurred in the present case, must be "objectively worse" than the original position in order to constitute an adverse employment action. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004). The plaintiff's transfer does not fall into the "objectively worse" category, as the plaintiff was recalled to basically the same position for the same rate of pay. "[A] transfer from one job to another is not an adverse employment action if it involves only minor changes in the employee's working conditions with no reduction in pay or benefits." *Brown v. Lester E. Cox Med. Ctrs.*, 286 F.3d 1040, 1045-46 (8th Cir. 2002).

The plaintiff had a duty to accept the defendant's recall. In *Shipley v. Lockheed Aeromod Ctr.*, 1995 U.S. App. LEXIS 27645, at *7 (4th Cir. 1995), the Fourth Circuit held that "Shipley's rejection of Lockheed's offer [to rehire] is fatal to his ADEA claim." Further, the 180-day time period does not begin to run merely because an employee is informed she might be terminated at some point in the future. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 849 (11th Cir. 2000). Had the plaintiff rejected the August 2007 recall altogether, or had she filed her EEOC charge during the period of her recalled employment, the defendant would no doubt be asserting these very arguments at this time.

The court finds that the plaintiff's wrongful termination claim is not time-barred. Alternatively, the court finds that the 180-day period should be equitably tolled. "The 180-day period is subject to equitable tolling." *Lovett v. Barbour Int'l*, 211 Fed. Appx. 281, 283 (5th Cir. 2006) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). A district court has

4

certain equitable powers including the discretion to toll a statutory time period such as the one at issue here. *See generally Teemac v. Henderson*, 298 F.3d 452, 456 (5th Cir. 2002).

The defendant contends that the law of this circuit requires that an employer misrepresent its intent to remedy the alleged unlawful practice in order to justify equitable tolling. This is a misstatement of the law. While an employer/defendant's misrepresentation to its employee/plaintiff would justify equitable tolling, such intentional misconduct is not required. Equitable tolling "does not hinge on intentional misconduct on the defendant's part. Rather, the issue is whether the defendant's conduct, innocent or not, reasonably induced the plaintiff not to file suit within the limitations period." *McGregor v. Louisiana State Univ. Bd. of Supervisors*, 3 F.3d 850, 865-66 (5th Cir. 1993). Recalling the plaintiff to work – even if only temporarily – after only a four-day lay-off, is "conduct, innocent or not, [which] reasonably induced the plaintiff not to file suit within the limitations period." *Id.* This court soundly exercised its discretion in equitably tolling the statute, as such action was "necessary to effect the remedial purpose of the ADEA." *Tyler v. Union Oil Co. of California*, 304 F.3d 379, 391 (5th Cir. 2002).

As to the defendant's argument regarding the sufficiency of the evidence, the court finds that the jury's verdict must stand. It cannot be legitimately argued that "the facts and inferences point so strongly and overwhelmingly in favor of [the defendant] that . . . reasonable men could not arrive at a contrary verdict." *Boeing v. Shipman*, 411 F.2d at 374-75 (5th Cir. 1969)

First, the court is unpersuaded by the defendant's assertion that the plaintiff failed to establish a prima facie case. It is uncontested that the plaintiff, who was sixty-six years old at the time of her termination, is a member of a protected class under the ADEA. It is also uncontested that she was terminated, and the evidence established that she was replaced by a

younger employee.  The only contested element of the prima facie case is whether the plaintiff was qualified for the position.  In light of the evidence set forth at trial, the defendant, although it attempts to do so, cannot genuinely argue that the plaintiff unqualified for the position at issue – assistant office manager.  The defendant argues that this position involved many tasks outside the plaintiff's knowledge and training, but the evidence set forth at trial showed that the job was mainly accounts payable – work for which the plaintiff is undisputedly qualified.  Further, a number of witnesses at trial testified as to the plaintiff's work ethic, abilities, and know-how.  These same witnesses also testified that there was no legitimate reason for the plaintiff to be terminated or for Kathy Gamble to be preferred over the plaintiff.  When asked to compare the work performance between the plaintiff and Gamble, the plaintiff's manager, Lee Hatcher, testified that "Mrs. Jean [the plaintiff] would work circles around her [Gamble]."  Hatcher also testified that Gamble was not known as a hard worker at the plant.  Elizabeth McDaniel, a co-worker and witness with direct knowledge of both the plaintiff's and Gamble's work histories, testified that "[t]here would be no comparison" between the work performance of the two employees and that the plaintiff "was just an all around better candidate for work."

The fact that the plaintiff was recalled to work to train Gamble is circumstantial evidence in support of the plaintiff's argument that she was more qualified than Gamble, and the jury no doubt took this fact into consideration.  The plaintiff testified that Gamble had made several mistakes in performing the accounts payable job when the plaintiff returned to work.  The plaintiff was tasked with correcting these mistakes and with training Gamble to perform the accounts payable work.  The plaintiff was finally terminated after a few months when Gamble had learned her job.  Shortly thereafter, Gamble left the company of her own accord to work for

6

a Toyota supplier in North Mississippi. Amy Watkins, a younger employee who had been previously laid off, was recalled to replace her in the accounts payable position in January 2008 – the same month in which the plaintiff was terminated.

The aforementioned testimony is a mere sampling of the evidence presented at trial upon which the jury could legitimately and reasonably base its verdict in favor of the plaintiff. The standards for a Rule 50 judgment as a matter of law or for a new trial pursuant to Rule 59 are stringent ones, and the defendant has not met its burden. For these reasons, the defendant's Rule 50 motions and motion for new trial shall be denied.

*Motions for Liquidated Damages and for Reinstatement or Front Pay*

The court next turns to the plaintiff's motions for liquidated damages and for reinstatement or front pay. Title 29 U.S.C. § 626(b) provides that "[t]he provisions of [the ADEA] shall be enforced in accordance with the powers, remedies, and procedures provided in" the Fair Labor Standards Act ("FLSA"), particularly 29 U.S.C. §§ 211(b), 216, and 217. Section 216(b) of the FLSA states in pertinent part:

> Any employer who violates the provisions of section 215(a)(3)[2] of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation, employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

The ADEA, however, limits recovery of liquidated damages to cases of willful violations of the Act. *See* 29 U.S.C. § 626(b) ("[L]iquidated damages shall be payable only in cases of willful violations of this chapter.").

---

[2] The ADEA provides that "[a]ny act prohibited under section 623 of this title shall be deemed to be a prohibited act under section 215 of this title." 29 U.S.C. § 626(b).

The Supreme Court defined a "willful" violation of the ADEA as one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617 (1993). This court instructed the jury in accordance with this definition, and the jury specifically found that the discrimination in this case was willful. The jury verdict first asked, "Was Plaintiff terminated because of her age?" The jury was directed to assess damages under question number 2 if the answer to the first question was "yes." Question 3 asked, "If the answer to question number 1 was 'yes,' state whether you find the age discrimination was willful." The jury checked "yes."

With this finding of willfulness, the court is bound by the law of this circuit to award liquidated damages. In *Tyler v. Union Oil Co.*, 304 F.3d 379 (5th Cir. 2002), the Fifth Circuit stated:

> We hold that the plain language of the statutes requires the interpretation that liquidated damages in an amount equal to the back pay award are mandatory upon a finding of willfulness.

*Id.* at 401. Before assessing liquidated damages, however, the court must first address a matter of an obvious jury error. In the plaintiff's closing argument, counsel specifically asked the jury to find in favor of the plaintiff in the amount of $48,000.00. During deliberations, the jury sent a note to the court asking if the jury could award attorneys' fees and punitive damages. The court answered the question in the negative. The jury then promptly returned its verdict of $53,370.00 – an amount $5,370.00 over the requested (and proven) damages for back pay. It is within the court's discretion to order a remittitur, and there is no abuse of discretion when there is a lack of evidence to support the verdict. *See Lincoln v. Case*, 340 F.3d 283, 290 (5th Cir. 2003). The jury awarded more than the plaintiff asked in this case, and for this reason, the court finds that a

8

remittitur is in order before liquidated damages are assessed. The court therefore finds that the verdict should be reduced to the requested $48,000.00 and that an equal amount should be awarded for liquidated damages.

The court notes that the defendant requested that the court stay a ruling on the motion for liquidated damages until after the defendant has exhausted its post-trial motions and appeals in this matter. The court finds this request contrary to the interests of judicial economy. If the defendant chooses to appeal, it may now include as part of said appeal any arguments against this court's award of liquidated damages.

The court also finds that a front pay award is in order in lieu of reinstatement. Front pay is defined as "an affirmative order designed to compensate the plaintiff for economic losses that have not occurred as of the date of the court decree, but that may occur as the plaintiff works toward his or her rightful place." *Seller v. Delgado Community College*, 839 F.2d 1132, 1141 (5th Cir. 1988). It is well-settled that the court has discretion to award reinstatement or front pay in employment discrimination cases. *Garza v. Brownsville Indep. Sch. Dist.*, 700 F.2d 253, 255 (5th Cir. 1983). Prevailing ADEA plaintiffs are entitled to "reinstatement unless special circumstances exist to justify the refusal of such relief." *McCormick v. Attala County Bd. of Ed.*, 541 F.2d 1094, 1095 (5th Cir. 1976). Where reinstatement is not feasible, however, the court should award front pay instead. *Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1253 (5th Cir. 1995).

The court finds that reinstatement is not feasible in the present case as the defendant has represented to this court that there are no vacancies in the defendant's operations and reinstatement would force the displacement of an existing employee. The court shall, therefore,

award front pay. The plaintiff has requested an award of five years' front pay, as an alternative to reinstatement, based on the amount of the plaintiff's 2007 earnings – that is, $22,232.59. The court finds this amount excessive under the facts of this case and will award two years' front pay based on said earnings of $22,232.59.

Conclusion

For the foregoing reasons, the court finds that the defendant's Rule 50 motions and Rule 59 motion for new trial should be denied and that the plaintiff's motions for liquidated damages and for front pay should be granted. A separate order in accord with this opinion shall issue this day.

This, the 8th day of July, 2010.

                                       */s/ Neal Biggers*
                                       **NEAL B. BIGGERS, JR.**
                                       **SENIOR U.S. DISTRICT JUDGE**